**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | **Criminal Action No.** |
| **BRANDON KEITH TARLETON,** | : | **5:09-CR-22 (HL)** |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

## ORDER

This matter is before the Court on Defendant Brandon Keith Tarleton's Motion to Suppress (Doc. 17). For the following reasons, the Motion is denied.

## I.  FINDINGS OF FACT[1]

On September 21, 2008, Agent Andrew Pippin, an officer with the City of Thomaston Police Department, met with a confidential informant ("CI") who stated that Defendant Brandon Tarleton was a methamphetamine dealer. Pippin knew that in the past the CI had provided information to other law enforcement officers that led to successful prosecutions for drug offenses. Pippin further knew of Tarleton's

---

[1]These findings of fact are based on testimony given by Agent Pippin at the Motion to Suppress Hearing on June 29, 2009. At that hearing, only two witnesses testified: Pippin, and Robert Moore, who testified for the defense. Moore was the driver of the vehicle used to transport Tarleton to the CI's house. His testimony was extremely brief, and did not contradict any of the testimony given by Agent Pippin. The Court found Agent Pippin to be a credible and reliable witness and therefore credits his testimony.

identity, having conducted surveillance on him in the past in response to complaints from members of the community.

During the meeting, the CI attempted to contact Tarleton by phone to arrange a buy but was unsuccessful.  Around 11 p.m. that night, Tarleton called the CI and made plans to deliver a quantity of methamphetamine to the CI's home in Upson County, Georgia.   The CI promptly contacted Agent Pippin and informed him that he had arranged a buy with Tarleton.  Agent Pippin and other law enforcement officers from the Thomaston Police Department set up surveillance outside the CI's home and awaited Tarleton's arrival.

Around 12:30 a.m. on September 22, 2008, the CI called Pippin from inside his residence and stated that Tarleton had pulled into his driveway.  Pippin told the CI to remain inside and to call back when Tarleton was on the front porch.  Shortly thereafter, the CI called Pippin again and stated that Tarleton was knocking on his front door.

At that time, Agent Pippin and another officer exited their vehicles, identified themselves as law enforcement officers, and approached the front porch.  Pippin, who recognized Tarleton from his prior surveillance of him, observed Tarleton place something into the back of his pants. He further observed Tarleton acting nervously and standing in such a way that appeared he was squeezing his buttocks together. When Pippin and another officer attempted to pat him down, Tarleton jerked around and would not stand still.  Eventually, Tarleton was placed in handcuffs, and, after

2

a brief scuffle, the drugs were retrieved from his buttocks region.  Tarleton was then read his Miranda rights, and after waiving those rights, he made several incriminating statements to the officers.

In moving to suppress the drugs, Tarleton argues that the arrest that produced the drugs was unconstitutional because it was not supported by probable cause or a warrant.  As a result, both the drugs and his post-arrest statements must be suppressed as the products of a tainted search.

## II.    DISCUSSION

The Fourth Amendment guarantees people the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.  A warrantless arrest in a public place is reasonable under the Fourth Amendment if the arresting officer has probable cause to believe that a felony has occurred.  Florida v. White, 526 U.S. 559, 565 (1999) (citing United States v. Watson, 423 U.S. 411, 416-424 (1976)).  "Probable cause to arrest exists when the totality of the facts and circumstances support 'a reasonable belief that the suspect had committed or was committing a crime.'" United States v. Lindsey, 482 F.3d 1285, 1291 (11th Cir. 2007) (quoting United States v. Gordon, 231 F.3d 750, 758 (11th Cir. 2000)).  Once a defendant has been lawfully arrested, a search incident to that arrest does not require additional justification.[2]  United States v.

---

[2]Where probable cause for an arrest exists prior to a search, the search incident to arrest doctrine applies equally to situations where the search occurs shortly before the formal arrest.

Robinson, 414 U.S. 218, 235 (1973); United States v. Goddard, 312 F.3d 1360, 1364 (11th Cir. 2002).

In this case, the Government contends that the search of Tarleton's person was reasonable because it was incident to a lawful arrest.  Tarleton argues that the arrest was unreasonable because it was executed without a warrant and it was not supported by probable cause.  Because the arrest occurred in a public place, the fact that the arrest was conducted without a warrant is not grounds to suppress the evidence.  The determinative issue is whether at the time of the arrest the arresting officers had probable cause to believe that Tarleton had committed or was committing a felony.  Resolution of this issue requires an analysis of when the arrest occurred, and the totality of the facts and circumstances that existed at that time.

A seizure occurs under the Fourth Amendment "if, in view of all the surrounding circumstances, a reasonable person would believe that he was not free to leave."  United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir. 1991).  But not every seizure constitutes an arrest that must be supported by probable cause.  United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995).  An investigatory stop, also known as a Terry stop, is not an arrest even though a reasonable person would not feel free to leave.  Id.  The distinction between a Terry stop and a custodial arrest is important because Terry stops are held to the less stringent

_____

Rawlings v. Kentucky, 448 U.S. 98, 111 (1980); United States v. Banshee, 91 F.3d 99, 102 (11th Cir. 1996).

requirement of reasonable suspicion.  Terry v. Ohio, 392 U.S. 1 (1968); United States v. Roper, 702 F.2d 984, 985 (11th Cir. 1983).

At the hearing on this Motion, Defendant argued that the arrest occurred at the time the officers surrounded the front porch of the CI's home because at that time a reasonable person would not have felt free to leave.  This argument is flawed because it is based on the test for a seizure, not an arrest.  Assuming a reasonable person would not have felt free to leave when the officers surrounded the porch, it would be erroneous to conclude that the officers were required to have probable cause at that time.  As noted above, whether reasonable suspicion or probable cause is required to support a detention depends on whether the detention qualifies as a Terry stop or a custodial arrest.  To differentiate between a Terry stop and an arrest, the Eleventh Circuit analyzes four nonexclusive factors: "(1) the law enforcement purpose served by the detention; (2) the diligence with which the officers pursued the investigation; (3) the scope and intrusiveness of the investigation; and (4) the duration of the detention."  United States v. Street, 472 F.3d 1298, 1306 (11th Cir. 2006);  United States v. Hardy, 855 F.2d 753, 759 (11th Cir. 1988).  When analyzing these factors, the focus of the inquiry is on "'whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" Street, 472 F.3d at 1306 (quoting United States v. Acosta, 363 F.3d 1141, 1147 (11th Cir. 2004)).

Applying those factors, the Court concludes that Tarleton was not under arrest when the officers surrounded the porch. First, the officers surrounded the porch for a valid law enforcement purpose–namely, to investigate a potential drug transaction. Second, the officers had to approach the porch to investigate further. Had the officers simply sat back and done nothing, they would not have been acting diligently. Third, approaching the porch was not intrusive. At that time, the officers did not exert any physical control over Tarleton. Last, the officers surrounded the porch for a brief time. This conclusion is supported by the testimony of the Defendant's own witness at the hearing. That witness stated that only a brief period of time elapsed between the time the officers exited their vehicles and actually entered the porch area.

Based on these factors, the Court finds that the act of surrounding the porch did not constitute an arrest. At most, it constituted a Terry stop, which was amply supported by reasonable suspicion. The reasonable suspicion arose from the tip from a known, reliable CI that Tarleton dealt drugs, and the CI's call to Pippin stating that Tarleton was at his door to deliver drugs. Once Pippin received the information that Tarleton was on the front porch, the officers had reasonable suspicion to approach the CI's home to investigate further.

Having reached this conclusion, it is not necessary to determine the exact moment that the arrest occurred. At the earliest, the arrest occurred at some point after the officers entered the porch area. In the Court's opinion, the arrest did not

6

occur until the officers actually handcuffed Tarleton.  But regardless of whether the arrest occurred shortly before that time–for example, when the officers physical came into contact with Tarleton and began to pat him down–the officers had probable cause to execute an arrest before they entered the porch.  Before they entered the porch, the following objective facts constituted probable cause to execute an arrest: (1) the tip from a reliable confidential informant that Tarleton dealt drugs; (2) the call from the CI inside the house stating that Tarleton was on the front porch to deliver the drugs; (3) the corroboration of that information by Agent Pippin, who observed Tarleton standing on the front porch as he approached the CI's house; and (4) Pippin's observation of Tarleton stuffing something into the back of his pants. Because the arrest occurred after those facts existed, the Court finds that Tarleton's arrest was reasonable under the Fourth Amendment, and therefore, the subsequent search incident to his arrest was lawful.  See Goddard, 312 F.3d at 1364 (observing that a search incident to a lawful arrest "requires no additional justification"). Accordingly, the evidence obtained during the search and the statements he gave after waiving his Miranda rights should not be suppressed.[3]

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is denied.

---

[3]At no point has Tarleton argued that he was not read his Miranda rights or that he did not waive those rights.  His entire argument has been that the statements he gave after his arrest should be suppressed as the fruits of an unlawful arrest.

7

SO ORDERED, this the 30th day of June, 2009.


/s/ Hugh Lawson
**HUGH LAWSON, Judge**

dhc